# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**LLOYD CHRISTMAS, et al.,**

    Plaintiffs,

-v-

**CITIMORTGAGE, INC., et al.,**

    Defendants.

Case No. 3:14-cv-071

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING CITIMORTGAGE'S AND MERS'S MOTION TO DISMISS (Doc. #7); GRANTING PRMI'S MOTION TO DISMISS (Doc. #10); DISMISSING THE CHRISTMASES' COMPLAINT WITH PREJUDICE AND TERMINATING THIS CASE**

---

The Complaint in this matter was originally filed in the Court of Common Pleas for Montgomery County, Ohio. It was subsequently removed to this Court based upon this Court having diversity subject matter jurisdiction.

The Plaintiffs in this matter are Lloyd Christmas and Valerie Christmas, Lloyd's spouse (the "Christmases"). The named Defendants are CitiMortgage, Inc. ("CitiMortgage"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Primary Residential Mortgage, Inc. ("PRMI"). John Doe 1-7 are also listed as Defendants but have not yet been identified.

The Christmases bring seven (7) Causes of Action in their Complaint. (Doc. #4.) All Causes of Action are against all three named Defendants.

The First Cause of Action is for lack of standing. The Second Cause of Action is for fraud in the concealment. The Third Cause of Action is for fraud in the inducement. The Fourth Cause of Action is for intentional infliction of emotional distress ("iied"). The Fifth Cause of Action is for quiet title. The Sixth Cause of Action is for declaratory relief, and the Seventh

Cause of Action is for recission.

Now before the Court is a Motion To Dismiss filed by CitiMortgage and MERS (doc. #7) and a Motion To Dismiss filed by PRMI (doc. #10). The Christmases have responded to these Motions and CitiMortgage, MERS and PRMI have replied. These Motions To Dismiss are, therefore, ripe for decision.

## RELEVANT FACTUAL BACKGROUND[1]

On December 27, 2006, the Christmases executed a Note on the real property located at 7651 Shepherdess Drive in Huber Heights, Ohio. (Compl. ¶30.) This Note named PRMI as the originating lender.[2] (Id.)

A Mortgage was executed the same day as the Note. (Id. at ¶31.) MERS[3] is identified in this Mortgage as the nominee for the lender. (Id.)

When the Christmases closed on their property, their original lender, PRMI, or another entity claiming ownership of the Note, signed a Pooling and Servicing Agreement (the "PSA").[4] (Id. at ¶23.) This PSA allegedly governed the Christmases mortgage note. (Id.)

---

[1] As taken from the Complaint

[2] The note attached to the Complaint was executed on November 23, 2004, and names First National Mortgage Banc, Inc. as the lender. The Christmases attached a note to their Response that is dated December 27, 2006, and names PRMI as the lender. (Doc. #12, Ex. 1.)

[3] The investment banks created MERS to streamline the securitization process. (Compl. ¶27.) The investment banks would transfer mortgages to MERS, thereby separating the note from the mortgage. (Id.) MERS would hold the mortgage for whoever later claimed to be the "owner" of the note. (Id.)

[4] A pooling and servicing agreement is a trust agreement required to be filed with the United States Securities and Exchange Commission ("SEC") which, along with another document called a mortgage loan purchase agreement, are the operative securitization documents. (Compl. ¶ 22.)

On May 25, 2012, MERS assigned the Mortgage to CitiMortgage. (Id. at ¶32.) CitiMortgage securitized[5] the Mortgage, along with other mortgages. (Id. at ¶33.) The trust into which the Mortgage was securitized is identified as the Citigroup Mortgage Loan Trust 2007-6 (hereinafter the "Trust"). (Id. at ¶34.)

The Trust was established under the PSA dated April 1, 2007. (Id. at ¶35.) The Parties to the PSA are Citigroup Mortgage Loan Trust, Inc. as depositor; CitiMortgage as master servicer and trust administrator; Citibank NA as paying agent, certificate registrar and authenticating agent; and US Bank, NA as trustee. (Id.) The Prospectus Supplement of the Trust lists Citigroup Global Markets Realty Corp. as sponsor and seller and Wachovia Mortgage Corp. as one of the originators. (Id.) Finally, according to the PSA, the startup date for the Trust was to be the same date as the closing date which was on or about April 30, 2007. (Id. at ¶41.)

The Christmases allege that CitiMortgage, MERS and PRMI are foreclosing on the Property, although they do not allege that a foreclosure action has been filed. (Id. at ¶90.) According to the Christmases, CitiMortgage, MERS and PRMI have represented to the Christmases that CitiMortgage, MERS and PRMI are entitled to exercise the power of foreclosure and sale provision contained in the Mortgage. (Id. at ¶99.)

## STANDARD OF REVIEW

---

[5]Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors. (Compl. ¶ 15.) The alleged purpose of securitization is to provide a large supply of money to lenders for originating loans and to provide investments to bond holders which were expected to be relatively safe. (Id.) The securitization procedure is to comply with certain tax laws, known as the Real Estate Mortgage Investment Conduit ("REMIC"). (Id.) Pursuant to REMIC, the issuing entities and the lenders are protected from either party going into bankruptcy. (Id.) From 1998 until the financial crash of 2008-2009, over 60 million home loans were sold by originating lender banks to investment banks to be securitized. (Id. at ¶14.)

CitiMortgage, MERS and PRMI seek to dismiss the Christmases' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004). Further, for purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. However, the factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*, 550 U.S. at 570.)

Further, the required level of factual specificity rises with the complexity of the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). A more complex case requires more detail "to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

The Sixth Circuit has noted that to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F. 2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Education.*, 76 F. 3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.*

**APPLICABLE LAW**

As a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law to this dispute unless the law of another state is specifically implicated, which, in this case, it is not. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo, M.D. v. UNUM Life Ins. Co. of America*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Imperial Hotels*, 257 F.3d at 620; *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

## ANALYSIS

CitiMortage, MERS and PRMI seek to dismiss each of the Christmases' claims. Therefore, each of the Christmases' claims will be addressed seriatim.

### Lack of Standing

For their First Cause of Action, the Christmases allege that none of the Defendants have standing to foreclose on the Property because none of the Defendants have perfected any security interest in the Property, because the Defendants cannot prove that they have a valid interest in the Property and because none of the Defendants have properly complied with the terms of the applicable securitization requirements. As a result, the Christmases ask the Court that the purported power of sale contained in the Note and Mortgage have no force and effect at this time.

CitiMortgage and MERS seek to dismiss this Cause of Action because the Christmases lack standing to challenge the assignments of the Mortgage and transfers of the Note as a result of securitization because the Christmases are not parties to the PSA. PRMI seeks to dismiss this

Cause of Action for this same reason.

A litigant who is not a party to an assignment lacks standing to challenge that assignment. *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, Inc.*, 399 F. Appx 97, 102 (6th Cir. 2010). More generally, a party must assert its own legal rights and interests and cannot rely upon the legal rights or interests of third parties. *Turner v. Lerner, Sampson & Rothfuss*, No. 1:11-CV-00056, 2011 WL 1357451 at *1 (N.D. Ohio Apr. 11, 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

The Christmases do not plead that they are a party to the PSA. Therefore, they have no legal right to challenge the PSA.

Perhaps, if a foreclosure action were filed, the Christmases might be able to challenge the documents supporting the foreclosure. However, the Christmases have not pled that a foreclosure action has been filed. They have pled only that a foreclosure action has been threatened.

The Christmases respond that the Sixth Circuit in *Livonia* created an exception to the general rule that a litigant who is not a party to an assignment lacks standing to challenge that assignment. The exception occurs when a party raising the claim cannot otherwise protect itself from having to pay the debt twice. *Livonia*, 399 F. Appx at 102. However, the Christmases have not pled that they have raised this claim because they cannot otherwise protect themselves from having to pay the debt due on the Note twice**.**

The Christmases also offer an unavailing policy argument as to why the law should not be applied to strictly prohibit any challenges, no matter what the circumstances, of any document in which the parties are not parties to the transaction. The existing law on this issue is clear and the Christmases do not offer a valid reason for failing to follow the existing law.

Finally, in their First Cause of Action, the Christmases ask the Court to restrain CitiMortgage, MERS and PRMI from foreclosing on the Property. However, to have standing to assert a claim in Ohio, a party must demonstrate an injury-in-fact. *Bank of New York Mellon Trust Co. v. Unger*, No. 97315, 2012 WL 1567192 at *5 (Ohio Ct. App. May 3, 2012). And, as determined above, Christmases do not have standing, nor have they demonstrated an injury-in-fact.

In sum, the Christmases First Cause of Action relies upon their challenge of the PSA and mortgage and note transfers. However, particularly without a foreclosure action, the Christmases do not have standing to challenge the PSA and mortgage and note transfers. Further, the Christmases do not currently have standing to challenge the security interest in the Property or whether CitiMortgage, MERS or PRMI properly complied with the terms of the PSA. Therefore, Christmases' First Cause of Action must be dismissed.

**Fraud In the Concealment**

For their Second Cause of Action, the Christmases allege that CitiMortgage, MERS and PRMI concealed the fact that their loan was securitized as well as the terms of the securitization agreements such that their loan changed in character. Further, they allege that CitiMortgage, MERS and PRMI intended to induce them based upon these alleged concealments. Finally, the Christmases assert that, had they known of the true intentions and profits, they would not have entered into the loan.

CitiMortage, MERS and PRMI respond that the Christmases have not pled this claim with the required particularity. They also respond that the Christmases have not alleged how they could have relied upon a representation or concealment of something that had not occurred and

that was contemplated by the loan documents.

## Particularity

Fed. R. Civ. P. 9(b) demands that fraud be pled with particularity. In the case of this cause of action for fraud, the Christmases assert that they can provide the dates, specific statements, and speaker(s) regarding the date the trust closed and the dates of the transfers that occurred thereafter. However, this information is not the particularity for this cause of action envisioned by Rule 9(b). The particularity envisioned by Rule 9(b) would include the specific misrepresentations, or omissions, who specifically made the specific misrepresentations and to whom they were made, and when and where they were made.

Specifically, neither CitiMortgage nor MERS were present at the closing so they could not have made any representation or omission. PRMI was allegedly present. However, the Mortgage that the Christmases signed provides that transfer of the Note and Mortgage can take place. (Compl. Ex. B, ¶20.)

In sum, the Christmases have not plead their allegations with particularity, nor can they. Even if they could, their Second Cause of Action does not set forth facts regarding all of the element of a fraudulent concealment claim.

## Fraudulent Concealment

The elements of a fraudulent concealment claim are: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused

by the reliance. *Info. Leasing Corp. v. Chambers*, 789 N.E.2d 1155, 1174 (Ohio Ct. App. 2003).

In this case, the Christmases have not alleged that CitiMortgage, MERS or PRMI had a duty to disclose information regarding the securitization of their loan, how CitiMortgage or MERS could have concealed anything since neither was the originating lender or how securitization, which occurred after they entered into their loan, could have induced them or precluded them from entering into the loan. Further, the Mortgage that the Christmases actually signed indicates that a transfer of the Note and Mortgage may occur.

Further, as with their First Cause of Action, the Christmases Second Cause of Action relies upon their challenge of the PSA and mortgage and note transfers. However, particularly without a foreclosure action, the Christmases do not have standing to challenge the PSA and mortgage and note transfers.

The Christmases have not pled their fraud-in-the-concealment claim with particularity. Further, they have not pled all of the necessary elements of a fraud-in-the-concealment claim. Therefore, the Christmases Second Cause of Action must be dismissed.

**Fraud In the Inducement**

For their Third Cause of Action, the Christmases allege that CitiMortgage, MERS and PRMI intentionally misrepresented to them that CitiMortgage, MERS and PRMI were entitled to exercise the power of sale provision contained in the Mortgage. The Christmases further allege that this failure to disclose the material terms of the transaction induced them to enter into the loan and accept the associated services. Finally, the Christmases allege that CitiMortgage, MERS and PRMI misrepresented that they are the holder and owner of the Note and the beneficiary of the Mortgage.

As with the fraudulent concealment claim, CitiMortage, MERS and PRMI respond that the Christmases have not pled this claim with the required particularity. They also respond that the Christmases have not alleged how they could have relied upon a representation or concealment of something that had not occurred and that was contemplated by the loan documents.

Initially, CitiMortgage and MERS could not have made any misrepresentation to the Christmases when the Christmases entered into the Note and Mortgage because CitiMortgage and MERS were not present when the Christmases entered into the Note and Mortgage. Further, the Mortgage that the Christmases signed contemplated the possible transfer of the Note and Mortgage.

Secondly, the Christmases appear to be either knowingly or unknowingly confusing two events. One is the signing of the Note and Mortgage and the other is subsequent activity regarding the Note and Mortgage. Clearly, as determined more fully above, the Christmases did not plead any fraud when they entered into the Note and Mortgage with particularity and the elements of fraudulent inducement at that time are not satisfactorily pled.

As for subsequent activities, as determined above, the Christmases do not have standing to challenge subsequent assignments of the Note and Mortgage. Further, it is difficult to imagine how subsequent activities could have induced them to take action, or refrain from taking action, when they signed the Note and Mortgage.

Also, as with their First and Second Cause of Action, the Christmases' Third Cause of Action relies upon their challenge of the PSA and mortgage and note transfers. However, particularly without a foreclosure action, the Christmases do not have standing to challenge the

PSA and mortgage and note transfers.

The Christmases have not pled their fraud-in-the-inducement claim with particularity. Further, they have not pled all of the necessary elements of a fraud-in-the-inducement claim. As for challenging any of the subsequent activities identified by the Christmases, they have no standing to do so. Therefore, the Christmases Third Cause of Action must be dismissed.

**IIED**

For their Fourth Cause of Action, the Christmases allege that fraudulently claiming the right to foreclose on the Property, presumably by CitiMortgage, MERS and/or PRMI is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community and has intentionally caused them severe emotional distress. CitiMortgage, MERS and PRMI argue that this Cause of Action fails because the Christmases have failed to plead what conduct of CitiMortgage, MERS or PRMI rises to the level of "extreme and outrageous."

The elements of a iied claim are: "(1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure." *Jones v. Option One Mortgage Corp.*, 466 F. Appx 449, 454 (6th Cir. 2012)(citing *Eblin v. Corrections Medical Center*, 822 N.E.2d 814, 820-21 (Ohio Ct. App. 2004)). Further, the Ohio Supreme Court has said that iied liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20, Teamsters,*

*Chauffeurs, Warehousemen, & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983).

In this case, the Christmases claim that CitiMortgage's, MERS's and PRMI's assertion that they can foreclose on the Property is so outrageous and extreme that this conduct exceeds all bounds which are usually tolerated in a civilized community. However, the Court finds that this action, does not rise to the level of extreme and outrageous, particularly since, if anything, it is a threat, and particularly since the Christmases do not plead that a foreclosure action has been filed. Thus, the Christmases' Fourth Cause of Action for iied must be dismissed.

**Quiet Title**

For their Fifth Cause of Action, the Christmases request a decree that permanently enjoins CitiMortgage, MERS and PRMI from asserting any adverse claim to their title to the Property. CitiMortgage, MERS and PRMI argue that this Cause of Action fails because neither a Mortgage nor a Mortgage Assignment constitute a cloud on title. The Christmases respond that "there is no doubt" that they have "standing to challenge to validity of a promissory Note bearing their signature."

O.R.C. § 5303.01 provides for actions to quiet title. This statute provides that, "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest."

In this case, the Note and Mortgage assignments did not alter the Christmases' obligations. *See Bank of New York Mellon Trust Co. v. Unger*, No. , 2012 WL 1567192 at * 7 (Ohio Ct. App. May 3, 2012)("The Unger's default exposed them to foreclosure regardless of the party who actually proceeds with foreclosure."). Therefore, the Christmases have failed to show

that they suffered or will suffer any injury traceable to the Note and Mortgage assignments.

Further, if the Christmases could plead that they suffered or will suffer an injury, a mortgage or mortgage assignment is not a "cloud" on the title to the Property. *See Unger*, 2012 WL 156192 at * 7. The Mortgage is nothing more than a lien on the Property which is to put other lien holders on notice that there is a prior claim on the Property.

As with prior Causes of Action, the Christmases Fifth Cause of Action relies upon their challenge of the PSA and mortgage and note transfers. However, particularly without a foreclosure action, the Christmases do not have standing to challenge the PSA and mortgage and note transfers.

The Christmases do not have standing to challenge the Note, Mortgage and subsequent Mortgage assignments. Further, the Mortgages and any subsequent assignments did not alter the Christmases' obligations under the Note and Mortgage that they have pled that they signed. Therefore, the Christmases' Fifth Cause of Action for quiet title must be dismissed.

**Declaratory Relief**

For their Sixth Cause of Action, the Christmases request a judicial determination of the rights, obligations and interest of themselves, CitiMortgage, MERS and PRMI with regard to the Property. Further, they request a decree declaring that they are entitled to the exclusive possession of the Property. CitiMortage, MERS and PRMI argue that the Christmases' claim for declaratory relief fails because the Christmases cannot show an injury-in-fact.

A declaratory judgment claimant must allege an injury-in-fact to meet standing requirements. *Wilmington City School District Board of Education v. Clinton County Board of Commissioners*, 750 N.E.2d 1141, 1146 (Ohio Ct. App. 2000). However, as more fully discussed

above, the Christmases have not pled an injury-in-fact. Faulty note and mortgage assignments, without a foreclosure action, are not injuries-in-fact to the makers of the note and mortgage. *Unger*, 2012 WL 1567192 at *6.

Because the Christmases have not pled a cognizable injury-in-fact, they do not have standing to seek a declaratory judgment. Therefore, the Christmases' Sixth Cause of Action must be dismissed.

**Recission**

For their Seventh Cause of Action, the Christmases argue that they are entitled to rescind their loan and all accompanying loan documents due to CitiMortgage's, MERS', and PRMI's actions with regard to the Property. CitiMortgage, MERS and PRMI do not specifically address the Christmases' recission claim. They do, however, argue that all of Christmases' claims fail because the Christmases lack standing to challenge the PSA and mortgage and note transfers.

The Christmases acknowledge that they entered into the Note and Mortgage. Further, as more fully discussed above, the Christmases lack standing to challenge the PSA and mortgage and note transfers. Finally, the Christmases have not adequately pled that CitiMortgage, MERS and PRMI have yet done anything that legally harms the Christmases. Therefore, the Christmases' Seventh Cause of Action must be dismissed.

**AMENDMENT OF THE COMPLAINT**

The Christmases request leave to amend their Complaint if the Court finds that their Complaint does not meet the standards set forth in *Twombly* and *Iqbal*. However, it is not the standards that are set forth in Twombly and Iqbal that have resulted in dismissal. Each of the Christmases' Causes of Action was dismissed for not meeting various legal standards and, in

general, because the Christmases cannot show standing or an injury-in-fact. Further, a consideration of the documents attached to the Christmases Brief In Opposition To Defendants' Motions To Dismiss along with their Complaint would result in the same conclusion. The Christmases have not shown that amendment of their complaint would not be futile. Therefore, the Christmases' Complaint must be dismissed with prejudice.

## CONCLUSION

CitiMortgage's and MERS's Motion To Dismiss (doc. #7) is granted. PRMI's Motion To Dismiss (doc. #10) is granted. The Christmases Complaint is dismissed with prejudice. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-First day of May, 2014.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record